UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

Case No. 8:11-cr-548-T-33MAP

IHAB STEVE BARSOUM

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Ihab Steve Barsoum's Motion for New Trial (Doc. # 204), filed on January 10, 2013. The Government filed a response in opposition to the motion for a new trial on January 31, 2013. (Doc. # 211). For the reasons that follow, the Court denies Barsoum's motion.

**I. Background**

An indictment was filed against Ihab Steve Barsoum on October 26, 2011. (Doc. # 1). On July 5, 2012, a six-count superseding indictment was filed, charging Barsoum with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) by knowingly and intentionally dispensing and distributing – and causing to be dispensed and distributed – quantities of Oxycodone not for legitimate medical purposes, and not in the usual course of professional practice, as well as knowingly and willfully conspiring to do so. (Doc. # 1).

Barsoum's trial began on August 13, 2012 (Doc. # 145), and on August 21, 2012, the jury found Barsoum guilty as charged on all six counts (Doc. # 175).

Subsequent to the trial, Barsoum's legal counsel "learned the names of several witnesses who relayed highly exculpatory information to counsel concerning this case, the substance of which was unknown and undiscoverable to the defense counsel until well after the jury rendered its verdict." (Doc. # 204 at 1). In light of this newly discovered evidence, on December 10, 2012, Barsoum requested a hearing (Doc. # 186) aimed at preserving the newly discovered evidence for sentencing and in anticipation of a motion for a new trial. (Doc. # 204 at 1). The Court granted the motion in part (Doc. # 187), and the hearing was held on December 19, 2012 (Doc. # 194). During the hearing the Court admitted recorded statements and heard sworn testimony from three witnesses. (Doc. ## 194, 195, 197).

Barsoum filed a motion for a new trial on January 10, 2013 (Doc. # 204), and, after receiving an extension of time from the Court (Doc. # 206), the Government timely filed its response in opposition to the motion on January 31, 2013 (Doc. # 211).

2

## II. **Legal Standard**

In relevant part, Federal Rule of Criminal Procedure 33 reads: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Nonetheless, "A motion for new trial is entrusted to the discretion of the trial judge, is not subject to facile reversal, and will be reversed only where it is shown that the ruling was so clearly erroneous as to constitute an abuse of discretion." United States v. Metz, 652 F.2d 478, 479 (5th Cir. Unit A Aug. 1981) (internal citations and quotations omitted).[1] See also United States v. Reed, 887 F.2d 1398, 1404 (11th Cir. 1989) ("A motion for a new trial is addressed to the sound discretion of the trial court, and a decision to deny a new trial motion will not be reversed absent an abuse of discretion").

Motions for a new trial are highly disfavored, and the Eleventh Circuit has held that new trials based on newly discovered evidence should be granted only with great caution. E.g., United States v. Jernigan, 341 F.3d 1273,

---

[1] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981.   661 F.2d 1206, 1207 (11th Cir. 1981).

1287 (11th Cir. 2003) ("Indeed, we have held that motions for a new trial are highly disfavored, and that district courts should use great caution in granting a new trial motion based on newly discovered evidence") (internal quotations omitted); United States v. Johnson, 713 F.2d 654, 661 (11th Cir. 1983) ("A new trial based upon newly discovered evidence should be granted only with great caution.") (internal quotations omitted).

To justify a new trial on the basis of newly discovered evidence, five elements must be satisfied:

> (1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

Reed, 887 F.2d at 1404 (citing United States v. DiBernardo, 880 F.2d 1216 (11th Cir. 1989), United States v. Burton, 871 F.2d 1566 (11th Cir. 1989), United States v. Champion, 813 F.2d 1154 (11th Cir. 1987)). Furthermore, "[a]s a matter of law, the trial court cannot grant a motion for a new trial based on newly discovered evidence once it has determined that the movant has failed to satisfy any part of the five-part test." Reed, 887 F.2d at 1404.

Additionally, "In ruling on a motion for new trial based upon newly discovered evidence, it is within the province of the trial court to consider the credibility of those individuals who give statements in support of the motion." Id. at 1404 n.12 (citing Jones v. United States, 279 F.2d 433 (4th Cir. 1960)). It is also "settled law that newly discovered evidence, the effect of which is to discredit, contradict or impeach a witness, does not afford a basis for the granting of a new trial." Brown v. Schwartz, 164 F.2d 151, 152-53 (5th Cir. 1947) (internal quotation omitted). Instead, for "newly discovered evidence to justify a new trial, the evidence must be material and not merely cumulative or impeaching, and must be such that it will probably produce an acquittal." United States v. Diaz, 190 F.3d 1247, 1255 (11th Cir. 1999).

### III. **Analysis**

The newly discovered evidence at issue involves the testimony of Christopher Scott and Patrick Stevens. Barsoum claims that after the trial, "it was brought to the attention of undersigned counsel that multiple federal inmates possessed exculpatory information regarding the government's witnesses." (Doc. # 204 at 4). Specifically, Barsoum claims that Scott and Stevens spoke to several

inmates – Shane Barber, Michael McBroom, and Samuel Posa – after the trial ended, and that statements made by Scott and Stevens during those conversations conflict with the trial testimony of Scott and Stevens. (Id. at 4-5). Barsoum states that the "evidence received through these witnesses pertains to significant issues at trial, including: 1) weapons possessed by Stevens for which he was not prosecuted and that confirm Stevens' inclination toward violence; 2) threats made by Stevens to the Defendant in order to get the Defendant to comply with his demands; and 3) the Defendant's lack of knowledge and intent to conspire to distribute controlled substances." (Id. at 5).

### A. **Newly Discovered Evidence Regarding the Testimony of Christopher Scott**

Barsoum claims that subsequent to the trial, Christopher Scott told two other inmates that Barsoum was not aware that the prescriptions Scott presented to be filled were fraudulent, and that "the pharmacist had no idea." (Doc. # 204 at 9) (citing Hearing Tr. Doc. # 197 at 54). Additionally, Barsoum claims that Scott told one of the inmates that Scott "was testifying in a trial against Barsoum, and that Barsoum had 'bammed him' so Scott was going to 'bamm' him back, which [the inmate] interpreted as

Scott was going to return the 'favor' to Barsoum for Barsoum's cooperation against Scott in Scott's state case." (Id.) (citing Hearing Tr. Doc. # 197 at 38). Barsoum also claims that Scott detailed to the inmates the methods by which he filled fraudulent prescriptions. (Id.) (citing Hearing Tr. Doc. # 197 at 53-54, 39).

To the extent that Barsoum intends this newly discovered evidence as proof that Scott lied under oath, or had incentive to lie under oath, the evidence is merely impeachment evidence and does not warrant a new trial. See United States v. Johnson, 305 F. App'x 524, 529 (11th Cir. 2008) ("As a suggestion that these witnesses did not offer truthful testimony at trial, the [newly discovered evidence] goes to their credibility and could only be used on cross-examination for impeachment purposes.").

Also, evidence concerning Scott's possible incentive for testifying came before the jury when DEA Task Force Agent Jeffrey Shearer was questioned about telling Scott that "testifying against the defendant was his only glimmer of 'hope' of spending less than twenty-five years in prison," when the defense introduced Scott's "discovery notice listing the defendant as a witness against him into evidence," and when Scott was cross examined about

testifying to get back at Barsoum. (Doc. # 211 at 8). As such, the evidence is cumulative of evidence presented at trial and does not warrant a new trial. See United States v. Johnson, 713 F.2d 654, 661-62 (11th Cir. 1983) (finding testimony from a newly discovered witness that a kidnapping victim stated that she had been out with friends the weekend of the alleged kidnapping was cumulative because another witness had testified at trial to similar statements from the kidnapping victim).

Even if the testimony concerning Scott was not merely cumulative or impeaching, it is still unlikely that the fifth element could be met: The evidence is not of such a nature that a new trial would probably produce a new result.  See Reed, 887 F.2d at 1404. As previously stated, the veracity of Scott's testimony was already in question because of evidence presented concerning his personal incentive to testify or even to be dishonest. Additionally, if Barsoum intends the testimony to show that Barsoum was not aware that the prescriptions Scott had filled were fraudulent, a great deal of evidence was presented to show that Barsoum was acting knowingly and intentionally. The defense actually provided records showing that Scott, using assumed names (even female names), received more than

16,000 Oxycodone pills from Barsoum within a little over a year. (Doc. # 211 at 8). Along with other evidence, the testimony of Emily Squires, Dr. Willem Nell, Dr. Robert Belsole, and Paul Doering; the text message exchanges between Stevens and Barsoum; the video and wire recordings; and Barsoum's phone records all constitute evidence – independent of Scott's testimony – that Barsoum was aware that the prescriptions he was filling were fraudulent. The fact that the Government can show the jury a video of Barsoum teaching Stevens how to write fake prescriptions (Id. at 14) makes it unlikely that the outcome of a trial would be altered by prisoners' testimony that one witness was less than truthful during his testimony. See United States v. Gonzalez, 661 F.2d 488, 496 (5th Cir. Unit B Nov. 1981) ("The appellant does not offer [the original witness'] own testimony [that he had lied at the trial,] only that of a third person. Consequently, the additional evidence would be merely cumulative, and, in light of the other evidence before the jury at the trial, it is not likely to produce a different result.").

   B. **Newly Discovered Evidence Regarding the Testimony of Patrick Stevens**

Barsoum also claims that after the trial concluded, Stevens told several inmates that Stevens owns, has access to, and is interested in guns. (Doc. # 204 at 6-7). Stevens denied such access to or ownership of firearms during trial. (Hearing Tr. Doc. # 197 at 25, 7, 12-18). Nonetheless, evidence that someone owns, likes, or has access to weaponry is not evidence that an individual was violent on a particular occasion. The Court acknowledges that "[n]ewly discovered evidence need not relate directly to the issue of guilt or innocence to justify a new trial," but it must be "probative of another issue of law." United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006). As such, the inmates' testimony concerning Stevens and firearms is not material and, to the extent that the testimony shows that Stevens is a felon who illegally possessed a firearm, or suggests that Stevens perjured himself during the trial, the testimony is merely impeachment evidence and does not warrant a new trial. See Johnson, 305 F. App'x at 529; United States v. Diecidue, 448 F. Supp. 1011, 1013 (M.D. Fla. 1978) (finding that when a witness testified during trial that he had never used explosives, a third party's testimony that the witness had used explosives in the past "would constitute, at most,

impeaching evidence of a prior inconsistent statement" by the witness).

Barsoum also claims that Stevens told several inmates that at some point Barsoum "caught on that Stevens was doing something wrong" and that Stevens then intimidated or threatened Barsoum in order to obtain Barsoum's continued compliance. (Doc. # 204 at 8). Once again, to the extent that Barsoum seeks to use this newly discovered evidence to show that Stevens was less than truthful during his testimony, the evidence is merely impeachment evidence and, therefore, does not warrant a new trial. And as discussed above, to the extent that Barsoum seeks to use the evidence as proof that Barsoum was unaware that the prescriptions he was filling were fraudulent, the evidence is not likely to produce a different outcome.

Barsoum may intend the testimony to show that Barsoum acted out of fear. However, Barsoum presented testimony concerning that theory of defense at trial, including: testimony from Barsoum's wife that the police could not always protect them and that she finally understood why her husband had so acted, testimony from Michael Awaddalla that he had seen Barsoum crying at work, Stevens' "threatening" letter to Sam Wahba, and evidence about Stevens' character

as a bully and a motorcycle gang member. (Doc. # 211 at 7). As such, the newly discovered evidence is merely cumulative and a new trial is not warranted.

Additionally, as discussed above, considering the other evidence presented against Barsoum at trial (testimony other than that from Scott and Stevens, video recordings, transcripts from wires, phone messages, phone records, etc.), it is unlikely that this third-party testimony would produce a different outcome at trial. In particular, the text message conversations and the video recordings presented to the jury provide evidence that Stevens and Barsoum were on friendly terms, and that Barsoum at least occasionally instructed Stevens on certain aspects of the scheme. (Id. at 13-14). Accordingly, the evidence concerning Stevens' alleged intimidation of Barsoum does not satisfy the fifth element and does not warrant a new trial.

The Court finds that the testimony of Barber, McBroom, and Posa is either cumulative evidence that serves only to impeach Scott and Stevens, or, where the evidence may be more than cumulative impeachment evidence, the other evidence offered during trial makes it unlikely that the

12

presentation of the newly discovered evidence during a new trial would produce a different result.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Ihab Steve Barsoum's Motion for New Trial (Doc. # 204) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 4th day of February, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record